Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| JOSÉ R. LÓPEZ ROSADO<br><br>Apelante<br><br>V.<br><br>ADT SECURITY SERVICES<br><br>Apelado | KLAN202500127 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV05541<br><br>Sobre: Despido Injustificado (Procedimiento Sumario) |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de marzo de 2025.

El 18 de febrero de 2025, compareció ante este Tribunal de Apelaciones, el Sr. José R. López Rosado (en adelante, parte apelante o señor López Rosado), por medio de *Apelación.* Mediante esta, nos solicita que revisemos la *Sentencia* emitida y notificada el 7 de febrero de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada el 28 de junio de 2024, por ADT Puerto Rico LLC, denominada incorrectamente en la *Querella* como ADT Security Services (en adelante, parte apelada o ADT) y No Ha Lugar la *Moción en Oposición a Solicitud de Sentencia Sumaria* incoada el 18 de julio de 2024, por la parte apelante.

Por los fundamentos que adelante se exponen, se confirma el dictamen apelado.

**I**

El caso que nos ocupa tiene su génesis en una *Querella* instada el 8 de junio de 2023 por la parte apelante en contra de la

Número Identificador

SEN2025 _____

parte apelada por despido injustificado, instada bajo el procedimiento sumario estatuido por la Ley 2, *infra*.[1] En su *Querella*, el apelante alegó que, fue despedido injustificadamente de su posición de Técnico de Servicio residencial/comercial el 1 de mayo de 2023. Consecuentemente, al amparo de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, reclamó una mesada de $25,420.00 y el pago de $6,355.00 por concepto de honorarios de abogado, más los gastos del pleito.

El 9 de junio de 2023, en cumplimiento con la sección 5 de la Ley 2, *infra*, la Secretaría del foro primario le notificó a la parte apelada que se había presentado una acción en su contra radicada bajo el número SJ2023CV05541.[2]

El 26 de junio de 2023, la parte apelada presentó su *Contestación a la Querella*.[3] En esencia, indicó que el despido fue notificado al apelante el 28 de abril de 2023. Añadió que, al momento del despido, el apelante fungía como "Tech II – Service", y que el salario más alto pagado a este fue de $15.50 por hora. Explicó que, se había visto obligado a disminuir su personal por motivo de la reducción del volumen de negocios y que ello justificó la acción de despido, según provisto en la Ley Núm. 80, *supra*. ADT negó que a la parte apelante le correspondiera la indemnización solicitada o cualquier otro tipo de remedio. A estos efectos, solicitó al foro apelado que declarara sin lugar la *Querella* en su contra.

Subsiguientemente, el 28 de junio de 2024, la parte apelada incoó *Moción de Sentencia Sumaria*.[4] Reiteró que, la razón del despido fue consecuencia de la reducción de personal, por razón de reorganización de la empresa. En su moción dispositiva, la parte apelada esbozó veintinueve (29) hechos que, a su juicio, no están en

---

[1] Véase, págs. 39-40, del Apéndice del recurso de la parte apelante.
[2] Información obtenida mediante una búsqueda al Sistema Uniforme de Manejo y Administración de Casos (SUMAC).
[3] *Íd.*, págs. 41-44.
[4] *Íd.*, págs. 45-62.

controversia. Asimismo, indicó que, la parte apelante dejó de exponer alegaciones que justificaran la concesión de un remedio en ley.

El 18 de julio de 2024, la parte apelante presentó *Moción en Oposición a Solicitud de Sentencia Sumaria*.[5] Por medio de esta, adujo que existía controversia sobre veintiséis (26) de los alegados hechos incontrovertidos presentados por la parte apelada y solicitó que se declarara No Ha Lugar la *Moción de Sentencia Sumaria*. Argumentó que, la Ley Núm. 4 de 26 de enero de 2017, conocida como Ley de Transformación y Flexibilidad Laboral (Ley Núm. 4), no era aplicable al caso de autos.

El 5 de agosto de 2024, la parte apelada incoó *Réplica a "Moción en Oposición a Solicitud de Sentencia Sumaria"*.[6] Allí sostuvo que, la parte apelante incumplió sus obligaciones procesales al no incluir argumentos en derecho que refutaran la petición de sentencia sumaria, conforme a la Regla 36 de Procedimiento Civil, *infra.*

El 19 de agosto de 2024, la parte apelante presentó una *D[ú]plica*.[7]

Finalmente, el Tribunal de Primera Instancia emitió y notificó *Sentencia* el 7 de febrero de 2025,[8] en la cual determinó los siguientes Hechos Incontrovertidos:

1. El Sr. José R. López Rosado es mayor de edad y residente de Bayamón.

2. ADT Puerto Rico, LLC, está dedicado al negocio de proveer productos y servicios en las áreas de seguridad residencial y comercial, como también otros servicios y productos, incluyendo seguridad para asuntos de salud y la población envejeciente.

3. López Rosado prestó servicios para ADT desde el 30 de septiembre de 2008 hasta el 1 de mayo de 2023, cuando ADT le notificó su despido.

---

[5] *Íd.*, págs. 192-206.
[6] *Íd.*, págs. 222-234.
[7] *Íd.*, págs. 235-241.
[8] *Íd.*, págs. 2-38.

4.  Durante su empleo con ADT, el Querellante ocupó la posición de Técnico de Servicio II (Technician II – Service).

5.  En dicha posición, los deberes de López Rosado incluían identificar y resolver problemas con equipos y cableado; reparar, reajustar y reemplazar equipo inoperativo y verificar el funcionamiento adecuado; leer e interpretar planos, planos de construcción y planos eléctricos para realizar las reparaciones; preparar formularios para reportar reparaciones; coordinar inspecciones y/o instalaciones con las agencias competentes; y realizar todas las funciones y tareas asignadas y establecidas por sus supervisores, entre otras.

6.  A principios de 2023, ADT empleaba a diez personas en las posiciones de técnicos de servicio e instaladores, incluyendo a López Rosado.

7.  Por lo menos desde noviembre de 2019, ADT ha subcontratado en Puerto Rico los servicios de JL Security Electrical & A/C, Inc. (en adelante, "JL Security"), siendo el contrato de servicios más reciente el de 20 de noviembre de 2019 (en adelante, "Acuerdo").

8.  JL Security provee servicios de instalación, mantenimiento, inspección y reparación de equipo de alarma y seguridad de residencia, pequeños negocios y comercial, a clientes de ADT a solicitud de ADT.

9.  Como parte de la estrategia de negocio, tomando en consideración los costos e ingresos y para aumentar la competitividad y productividad del negocio, ADT determinó, a nivel de todo Estados Unidos, reducir costos y personal en varias localidades en donde opera, incluyendo Puerto Rico.

10. A principios del 2023, George Manginelli (en adelante, "Manginelli"), quien en aquel entonces se desempeñaba como Group General Manager para ADT a cargo de Florida y Puerto Rico, participó en varias llamadas con el *"Senior Leadership Team"* de ADT donde se discutió las operaciones de ADT y la necesidad de reducir costos para mejorar eficiencia.

11. Durante estas reuniones, Manginelli recibió instrucciones del "Senior Leadership Team" de ADT para reducir una cantidad específica de dólares en costos en las operaciones de Puerto Rico y Florida.

12. Manginelli implementó la reducción de costos reduciendo personal y reduciendo otros costos de operación de ADT en Puerto Rico y Florida.

13. Manginelli determinó que, para lograr la reducción en los costos, ADT tenía que eliminar cinco (5) puestos de trabajo en la operación de Puerto Rico.

14. Erika Torres, Gerente General de ADT en Puerto Rico (en adelante, "Torres"), y Manginelli, identificaron y seleccionaron a los empleados a ser despedidos en Puerto Rico a base de un análisis de productividad, calidad de trabajo, conocimiento del trabajo, enfoque al cliente, trabajo en equipo y las acciones correctivas de los empleados en sus expedientes de personal.

15. Como parte del proceso de selección para el despido de estos empleados, Torres preparó el documento titulado *"Reduction in Force (RIF) Evaluation Form"*.

16. A las áreas de productividad, calidad del trabajo, conocimiento de las funciones, enfoque al cliente, y trabajo en equipo a ser evaluadas, Torres y Ángel Arroyo, "Team Manager High Volume Install and Service" de ADT en Puerto Rico en ese momento (en adelante, "Arroyo"), asignaron a cada empleado una puntuación de entre uno (1) y tres (3); siendo uno (1) la puntuación más baja indicando un pobre desempeño, y tres (3) la puntuación más alta indicando el mejor desempeño posible. En las áreas de productividad, calidad del trabajo, y enfoque al cliente, Torres y Arroyo asignaron la puntuación utilizando las métricas compiladas por ADT en estas áreas.

17. En las áreas de conocimiento de funciones y trabajo en equipo, Torres y Arroyo asignaron una puntuación a cada uno de los empleados entre uno (1) y tres (3) basado en su apreciación del conocimiento de funciones y trabajo en equipo de cada uno. Torres y Arroyo llegaron a un consenso de la puntuación asignada a cada empleado en estas áreas.

18. Luego de asignar puntuaciones en cada área, Torres calculó un promedio de las puntuaciones asignadas e incluyó el resultado en el documento "Reduction in Force (RIF) Evaluation Form." Torres incluyó, además, una nota para resaltar a los empleados que tuvieran acciones correctivas por desempeño en sus respectivos expedientes de personal.

19. Torres y Manginelli evaluaron los resultados y seleccionaron para despido a los cuatro (4) empleados en las posiciones de instalación y servicio con las puntuaciones más bajas en sus respectivas clasificaciones ocupacionales quienes, además, eran los únicos cuatro (4) empleados en el área de instalación y servicio que tenían acciones correctivas por desempeño en sus respectivos expedientes. Además de esas cuatro (4) posiciones

en el área de instalación y servicio, ADT eliminó, además, una posición gerencial en Puerto Rico.

20. En específico, la reducción de personal impactó varias clasificaciones ocupacionales en la operación de ADT en Puerto Rico, a saber: dos (2) empleados en la clasificación ocupacional de *"Residential Installer"*, un (1) empleado en la clasificación ocupacional de *"Residential Technician II Service"*, un (1) empleado en la clasificación ocupacional de *"Residential Technician III Service"* y un (1) empleado en la clasificación ocupacional de *"Team Manager High Volume Install and Service"*.

21. Torres y Manginelli seleccionaron a López Rosado para despido porque obtuvo la puntuación más baja de todos sus compañeros, 1.4 de 3.0, y tenía varias acciones disciplinarias, incluyendo un plan de mejoramiento por escrito, el *"Improvement Development Plan or 'IDP'"*, en su expediente por sus problemas de desempeño.

22. La puntuación de López Rosado, 1.4 de 3.0, fue la más baja de todos los Técnicos II de Servicio. Además, fue la puntuación más baja de todos los técnicos en todos los niveles y de los instaladores. Según la escala establecida en el *"Reduction in Force Evaluation Form"*, en la columna intitulada *"Performance Rating Criteria"*, la puntuación del querellante significa que no cumplía con todas las expectativas de su posición al realizar trabajo por debajo de lo esperado demostrando resultados inconsistentes.

23. La puntuación obtenida por José Rivas (en adelante, "Rivas") , el otro Técnico de Servicio II empleado por ADT al momento de tomar la decisión de despedir al Querellante, de 2.8/3.0, significa que el desempeño de Rivas es *"Extraordinario"* porque ha demostrado altos niveles de desempeño y ha ayudado a sus compañeros a desarrollar su competencia; su desempeño excede, por mucho, las expectativas y genera tremendo valor y resultados de calidad más allá de las funciones de su posición y su desempeño excede las expectativas en términos del producto final del trabajo, por lo que es reconocido como un máximo contribuyente en comparación a sus compañeros, considerándolo como un excelente recurso para proveer adiestramiento, consejería y apoyo a otros.

24. Como parte del proceso de selección de López Rosado para su despido, ADT consideró, además de la puntuación del Querellante, (i) el "Plan de Mejoramiento del Rendimiento del Empleado" suscrito por el López Rosado el 14 de febrero de 2023, emitido con el fin de mejorar su desempeño y las métricas utilizadas por ADT para evaluar a los técnicos; (ii) la "Advertencia por Escrito al Empleado" del 29 de octubre de 2021, emitido a

López Rosado por no completar su ruta y no informar a sus supervisores a tiempo para coordinar planes alternos; y (iii) el "Performance Improvement Plan" de 23 de marzo de 2017, que ADT emitió a López Rosado por no seguir instrucciones o procedimientos al no completar documentos requeridos en el proceso de servicio.

25. Los empleados que se vieron afectados por la reducción de personal en Puerto Rico fueron seleccionados tomando en consideración a los empleados en la misma clasificación ocupacional.

26. Como parte de la reducción de personal, ADT despidió a López Rosado el 1 de mayo de 2023.

27. El 2 de mayo de 2023, ADT notificó a López Rosado varios documentos relacionados con su despido.

28. Durante su deposición, López Rosado indicó que su despido fue injustificado porque "siempre tuv[o] trabajo y siempre ha habido trabajo" en ADT en el área de servicios. Declaró que, incluso, el día que los despidieron tenía trabajo.

29. López Rosado fue uno de ochenta y ocho (88) empleados despedidos por ADT como parte de la reducción de personal. Empleados de ADT en Puerto Rico y diecinueve (19) estados, incluyendo Florida, Texas, Nueva York, Indiana, Pensilvania, Kansas, Colorado, Tennessee, California, Georgia, Massachusetts, Carolina del Norte, Washington, Connecticut, Luisiana, Misisipí, Nueva Jersey, Nevada, y Maryland, en 34 clasificaciones ocupacionales que incluyen IT Analyst, IT Architect, IT Director, IT Engineer, IT Senior Manager, IT Manager, IT Project Manager, IT Specialist, IT VicePresident, Quality Management Representative, CS & Monitoring Supervisor, Telemanagement Analyst, IT Senior Technician, Executive Administrative Assistant, Administrative Coordinator, Supply Chain Coordinator, Senior Software Developer, Installer, High Volume Install and Service Team Manager, Administrative Processor, Service Technician, Vintage Salary, Senior Customer Care Analytics Analyst, Employee Experience Unit Manager, Customer Care Enterprise Initiatives Manager, Retention Specialist, Care Administrator, NRD WKFCPLNG Administrator, NRD WKFCPLNG Analyst, Administrative Assistant Patrol, Care Team Manager, Product Engineer, Technical Project Manager, Senior Product Engineer, y Product Engineer, fueron despedidos como parte de la reducción de personal que afectó a López Rosado.

Asimismo, en su *Sentencia,* el Tribunal de Primera Instancia, dispuso:

> **POR TODO LO CUAL**, se declara **HA LUGAR** la *Moción de Sentencia Sumaria*, que presentó ADT Puerto Rico, LLC, el 28 de junio de 2024, y **NO HA LUGAR** la *Moción en Oposición a Solicitud de Sentencia Sumaria*, presentada el 18 de julio de 2024 por el Sr. José R. López Rosado.  Por consiguiente, se desestima con perjuicio la *Querella* incoada por el Sr. José R. López Rosado.[9]

Inconforme con lo resuelto, la parte apelante acudió ante este foro revisor mediante *Apelación*, en la cual esgrimió los siguientes señalamientos de error:

A.  ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUS[Ó] DE SU DISCRECIÓN AL ENMENDAR O PERMITIR ENMENDAR LAS ALEGACIONES, CONTRARIO A DERECHO.

B.  ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR LOS HECHOS 6 AL 25 Y 29 DE LA SENTENCIA.

C.  ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ATENDER LA SENTENCIA SUMARIA M[Á]S FAVORABLE PARA LA PARTE QUERELLADA.

El 4 de marzo de 2025, la parte apelada compareció mediante *Moción de Desestimación de la Apelación por falta de Jurisdicción.*

Con el beneficio de la comparecencia de las partes procedemos a resolver.

**II**

*A. Sentencia Sumaria*

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[10] *Birriel Colón v. Econo y Otro*, 213 DPR 80, 90 (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622, 627 (2022).  La sentencia sumaria está regida por la Regla

---

[9] *Íd.*, pág. 38.
[10] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[11] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71, 76 (2022). Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, pág. 335. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otro*, supra, pág. 91.

En consonancia con lo anterior, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo.[12]

---

[11] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335.

[12] Véase, *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019); *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA*, 200 DPR 929, 940-941 (2018); *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 336.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó, además, en *Pérez Vargas v. Office Depot*, supra, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335-336; *Serrano Picón v. Multinational Life Ins.*, supra.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otro*, supra, pág. 90; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos. que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, et al.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 336. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la sentencia sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas et al.*, supra.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan et al.*, supra, pág. 611. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otro*, supra, pág. 91. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.*; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

**B. Procedimiento Sumario de Reclamaciones Laborales**

La Ley Núm. 2, de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*, se creó con el fin de establecer un procedimiento sumario para los casos de reclamaciones de obreros y empleados contra sus patronos por servicios prestados. Por conducto de este procedimiento, se fomenta la rápida consideración y adjudicación de las querellas presentadas por los obreros o empleados. *Collazo v. New Fashion World Corporation* h/n/C Aliss, 2025 TSPR 22 (2025).[13]

---

[13] Véase, además, *Bacardí Corp. v. Torres Arroyo*, 202 DPR 1014, 1019 (2019); *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 732 (2016); *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 923 (1996).

La naturaleza de este tipo de reclamación exige celeridad en su tramitación, pues de esta forma se adelanta la política pública de proteger al obrero y desalentar el despido injustificado. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). Nuestro Tribunal Supremo ha afirmado que desprovisto de esta característica, resulta un procedimiento ordinario más. *Rodríguez v. Syntex P.R., Inc.,* 148 DPR 604, 612 (1999); *Díaz v. Hotel Miramar Corp.,* 103 DPR 314, 316 (1975).

En referencia a lo anterior, en *Rivera v. Insular Wire Products Corp.*, supra, pág. 928, el Tribunal Supremo enfatizó que los tribunales tienen amplia flexibilidad y discreción para manejar estos casos y resolverlos de la forma más justa, rápida y económica posible. Véase, además, *Piñero v. A.A.A.*, 146 DPR 890, 902-903 (1998). También expresó nuestro Máximo Foro que "el Tribunal de Primera Instancia guarda discreción para determinar si la querella de un obrero debe ser tramitada por la vía ordinaria, aunque el obrero reclamante considere conveniente tramitar su reclamación de forma sumaria". *Bacardí Corp. v. Torres Arroyo*, supra, pág. 1023, que cita a *Berríos v. González et al.*, 151 DPR 327, 340 (2000); *Rivera v. Insular Wire Products Corp.*, supra, pág. 927. Por igual, el Alto Foro, rechazó sostener cualquier "interpretación en extremo rígida de los esquemas procesales en materia laboral que tenga el efecto práctico de privar a los foros de instancia de la discreción necesaria para considerar y decidir controversias de forma adecuada y cabal". *Berríos v. González et al.*, supra, pág. 349. El Tribunal Supremo ha resuelto que, cuando una reclamación laboral instada bajo el proceso sumario de la Ley Núm. 2, *supra*, plantea varias causas de acción y, conforme el criterio del juzgador, las controversias resultan complejas, todas las causas de acción incluidas en la querella deben ser tramitadas en un juicio ordinario. *Id.*

### *C. La Ley Núm. 2, supra, y las Reglas de Procedimiento Civil*

Tal y como ha señalado nuestra última instancia judicial, con esta herramienta expedita, se instituyó un plazo corto para que el patrono conteste la querella laboral o solicite una prórroga dentro del plazo dispuesto. De manera que, si el patrono no contesta en un plazo de diez o quince días, según corresponda al distrito judicial donde fue presentada la querella y su ubicación, ni solicita una prórroga juramentada, el juez primario emitirá la sentencia y concederá el remedio solicitado, sin más citarle ni oírle.[14] En este contexto, el incumplimiento con el plazo legal para contestar la querella o solicitar una prórroga juramentada inexorablemente impone al patrono querellado los efectos de la litigación en rebeldía, pues el tribunal primario no tiene discreción para denegar su anotación. *Peña Lacern v. Martínez Hernández*, et al, 210 DPR 434, 435 (2022).[15]

Cónsono con el trámite especial, la propia Ley Núm. 2 dispone que las Reglas de Procedimiento Civil aplicarán supletoriamente en todo aquello que no esté en conflicto con las disposiciones específicas de esta o con el carácter sumario del procedimiento especial establecido en esta legislación.[16] El sentido de la letra de este párrafo es claro. Para resolver si un trámite ordinario de las normas de procedimiento civil aplica o no al procedimiento especial, es necesario determinar si la regla es "conflictiva o contraria con alguna disposición específica de la ley especial, y con el carácter sumario del procedimiento".[17]

---

[14] 32 LPRA sec. 3120.
[15] *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921 (2008).
[16] 32 LPRA sec. 3120.
[17] *Peña Lacern v. Martínez Hernández*, et al, supra, págs. 435-436, citando a *Díaz v. Hotel Miramar*, supra, pág. 321.

Como norma general, la Regla 13[18] permite que una vez notificada una alegación respondiente, la demanda se enmiende, aunque únicamente con la autorización del tribunal o mediante consentimiento por escrito de la parte contraria. Asimismo, establece una clarísima directriz en cuanto a la concesión liberal de este remedio "cuando la justicia así lo requiera". Resulta evidente que la regla concede, en primer lugar, discreción al tribunal para determinar la procedencia de una enmienda a las alegaciones y, en segundo lugar, favorece su concesión. *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 747 (2005). Así pues, son cuatro los elementos que deben considerarse para aplicar esta regla: (1) el impacto del tiempo transcurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada.

Ahora bien, una de las condiciones de la litigación civil modificadas en este trámite especial de la Ley 2, es que el patrono querellado debe "hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas u objeciones que no incluya en dicha alegación responsiva".[19] *Bajo esta medida especial el patrono no puede enmendar su contestación a la querella para traer nuevas defensas afirmativas.*[20] (Énfasis suplido).

---

[18] En nuestro ordenamiento procesal civil, las enmiendas a las alegaciones están contempladas por la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13, que en lo particular dispone:

Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera.

[19] Sec. 3 de la Ley Núm. 2, 32 LPRA sec. 3120.

[20] *Srio. del Trabajo v. J.C. Penney Co., Inc.*, 119 DPR 660, 669-671 (1987). Ahora bien, en *León Torres v. Rivera Lebrón*, nuestro Tribunal Supremo resolvió que, al aplicar supletoriamente la Regla 13.1 de Procedimiento Civil, en el contexto de un procedimiento sumario en virtud de la Ley Núm. 2, los empleados tienen la potestad de enmendar la querella presentada bajo determinadas condiciones.

### D. Ley Núm. 80 de 30 de mayo de 1976

La Ley Núm. 80 de 30 de mayo de 1976, conocida como la Ley sobre Despidos Injustificados (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*, según enmendada, regula las acciones relacionadas con el despido de un empleado. Tiene el propósito de proteger al empleado de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de despedir a los empleados injustificadamente. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 771 (2022); *González Santiago v. Baxter Health Care*, 202 DPR 281, 291 (2019); *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 649-650 (2014); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015).

En consonancia con su propósito, dicha pieza legislativa establece que "aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) están contratados sin tiempo determinado; (2) reciben una remuneración, y (3) son despedidos de su cargo, sin que haya mediado una justa causa", tienen derecho al pago de una compensación por su patrono (además del sueldo devengado), típicamente denominada como la mesada. *Rodríguez Gómez v. Multinational Ins.,* 207 DPR 540, 550 (2021); *Indulac v. Unión,* 207 DPR 279, 298 (2021).

No obstante, es meritorio destacar que, según se ha establecido doctrinalmente, [n]**uestro ordenamiento laboral no prohíbe el despido de un empleado.** Más bien protege "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo [...] a la vez que otorg[a] unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado".[21] Es decir, nuestro ordenamiento laboral

---

[21] Exposición de Motivos, Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, 1976 LPR 267, 268. Véase, además: *Feliciano Martes v. Sheraton*, 182 DPR 368 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455 (2010), citando a *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001).

busca proteger los derechos de los trabajadores con el fin de establecer un balance en las relaciones entre patronos y empleados.[22] Por ello, la *Ley de Indemnización por Despido sin Justa Causa*, mejor conocida como Ley Núm. 80, *supra*, tiene como propósito proteger el derecho de los trabajadores ante acciones "arbitrarias y caprichosas" de los patronos. En ese sentido, esta normativa le impone el pago de una indemnización conocida como "mesada" al patrono que sin justa causa despida a un empleado que es contratado por un periodo de tiempo indeterminado. *Segarra Rivera v. Int'l Shipping et al.*, págs. 982-983.

Cabe destacar que, la Ley Núm. 80, *supra*, sufrió una serie de enmiendas por medio de la Ley Núm. 4 de 26 de enero de 2017, conocida como Ley de Transformación y Flexibilidad Laboral. Como es sabido, la Ley Núm. 80, *supra*, le imponía al patrono el peso de la prueba y el deber de rebatir la presunción de que el despido había sido injustificado, no obstante, la Ley Núm. 4-2017 "[e]liminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]". *Ortiz Ortiz v. Medtronic*, supra, pág. 776 citando a E. García García, *El legado e implicaciones de la Reforma Laboral de 2017*, 86 Rev. Jur. UPR 1087, 1156 (2017).

Previo a la enmienda de la Ley Núm. 80, una vez un empleado instaba una causa de acción contra su patrono al amparo de la Ley Núm. 80, *supra*, nuestro ordenamiento legal disponía que "el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con el pago de la mesada". 29 LPRA 185k(a). *Feliciano Martes v. Sheraton*, supra, pág. 385.

---

[22] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 903 (2011).

Por otro lado, la aplicación de la Ley Núm. 4-2017 es prospectiva, su Art. 1.2 dispone que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en las secciones de [e]sta". 2 LPRA sec. 121a; *Ortiz Ortiz v. Medtronic*, supra, pág. 776.

Respecto a la justa causa, el Art. 2 de la Ley Núm. 80, *supra,* 29 LPRA sec. 185b, "[...] establece una lista, no taxativa, de las circunstancias que constituyen "justa causa" para el despido de un empleado, seis de ellas atribuidas al empleado y tres al patrono". *Lugo Montalvo v. Sol Meliá Vacation, supra*, pág. 231. Esto se debe a que "el concepto 'justa causa' es dinámico, puesto que se nutre de múltiples y fluidas situaciones imposibles de prever". *SLG Torres-Matundan v. Centro Patología, supra*, pág. 930*; Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 243 (2001).

En lo pertinente, conforme dispone la precitada Ley 80, se entenderá justa causa para el despido de un empleado, entre otras:

[...]

(d)    Cierre total, temporero o parcial de las operaciones del establecimiento.    En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con esta sección.

[...]

(f)    Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. Art. 2 de la Ley Núm. 80, *supra,* 29 LPRA sec. 185b.

[...]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En el *primer señalamiento de error*, la parte apelante sostiene que erró el foro primario y abusó de su discreción al enmendar o permitir enmendar las alegaciones, contrario a derecho. Arguye que, incidió el foro primario al permitirle a la parte querellada enmendar su contestación para levantar como defensa afirmativa, que el despido fue justificado porque obedeció a una reducción de personal, incluyendo una reducción en el volumen de negocios. Sostiene que, dichos planteamientos fueron levantados, por primera vez, en la moción de sentencia sumaria de la parte Querellada. No le asiste la razón.

De una revisión a la *Contestación a la Querella* se desprende con meridiana claridad que, la parte Querellada levantó oportunamente las aludidas defensas afirmativas. En lo particular, en el párrafo cuarto, alegó lo siguiente:

> 4. ADT niega el párrafo 4 de la Querella. ADT alega afirmativamente que el 28 de abril de 2023, despidió justificadamente al querellante como parte de una reducción de personal por razones de negocio y según permitido por la ley 80 de 30 de mayo de 1976, según enmendada, 29 LPRA § 185a et seq. ("Ley 80"). ADT alega afirmativamente que las razones de negocio para el despido justificado del querellante incluyeron, sin limitarse, a la reducción del volumen de negocios.

Por otro lado, en el acápite de las **Defensas Afirmativas**, la parte querellada esbozó las defensas enumeradas **4, 7 y 9,** que leen de la siguiente manera:

> 4. El 28 de abril de 2023, ADT le notificó al querellante de su despido con justa causa por razón de personal.
> [.....]
>
> 7. ADT se vio obligado a reducir su personal razones de negocio, incluyendo entre estas la reducción del volumen de negocios, y según lo permitido por la Ley 80.
> [.....]
>
> 9. las acciones de ADT en cuanto al querellante fueron justas y razonables, y relacionadas con el buen funcionamiento de su negocio.

Habida cuenta de que el patrono levantó oportunamente las defensas afirmativas sobre reducción de personal y reducción en el volumen de negocios como razones justificadas para el despido de la parte apelante, no vemos que el foro primario haya cometido el error que le fue imputado por la parte apelante.

En su *segundo señalamiento de error*, la parte apelante arguye que, incidió el foro primario al determinar los hechos 6 al 25 y 29 de la sentencia. Asimismo, en su *tercer señalamiento de error*, nos plantea que, erró el foro primario al atender la sentencia sumaria más favorable para la parte querellada.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error dos y tres de forma conjunta.

En virtud de la normativa que rige nuestro ordenamiento procesal, al revisar de *novo* la *Moción de Sentencia Sumaria*, así como la *Oposición a Moción de Sentencia Sumaria*,[23] nos corresponde determinar en primera instancia si, en efecto, se cumplieron con los requisitos de forma dispuestos en la Regla 36 de Procedimiento Civil, *supra*[24]. Veamos.

De un análisis del expediente ante nuestra consideración, surge que, la parte apelada en su *Moción de Sentencia Sumaria* cumplió con las formalidades de la Regla 36 de Procedimiento Civil, *supra,* puesto que, incluyó: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible

---

[23] Véase, págs. 45-191, del Apéndice del recurso de la parte apelante.
[24] *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 338; *Meléndez González v. Cuebas,* supra, pág. 114; *Rosado Reyes v. Global Healthcare*, supra, pág. 809.

en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia con la correspondiente argumentación del derecho aplicable, y (6) el remedio que debe ser concedido.[25] Puntualizamos que, la parte apelada presentó veintinueve (29) hechos esenciales y materiales sobre la causa de acción por despido injustificado bajo la Ley 80. Cada hecho esgrimido como incontrovertido, estuvo acompañado de documentación, a nuestro juicio, clara y detallada que sustenta el mismo.

Por el contrario, la *Moción en Oposición a Solicitud de Sentencia Sumaria*[26] presentada por el apelante, incumple crasamente con las formalidades dispuestas en la Regla 36.3. Ello, debido la parte apelante descansó en meras alegaciones genéricas, en contravención a lo establecido por la normativa reglamentaria y jurisprudencial.[27] En la relación de los hechos destacados en su oposición tampoco se identifican documentos específicos que sustenten su postura.

Luego de una revisión ponderada de la moción de sentencia sumaria, así como de la oposición a la misma, colegimos que, los hechos esgrimidos como incontrovertidos por la parte apelada y acogidos como determinaciones de hechos en la *Sentencia* apelada, están sustentados por el expediente ante nos. Del mismo se desprende que, el apelante fue uno de ochenta y ocho (88) empleados despedidos como parte de estos recortes realizados por la empresa entre Puerto Rico y Estados Unidos. Asimismo, quedó demostrado que, ADT aplicó métricas estandarizadas al proceso de reducción de personal a nivel local. Su análisis requirió la utilización

---

[25] *Rodríguez García v. UCA,* supra, pág. 940-941; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 336.

[26] Véase, págs. 192-210, del Apéndice del recurso de la parte apelante.

[27] Véase, *Birriel Colón v. Econo y Otro,* supra; *Ramos Pérez v. Univisión*, supra.

de criterios sobre la reducción de costos y mejoramiento de eficiencia operacional.

En Puerto Rico, la implementación de criterios de evaluación sobre la reducción de empleomanía recayó en la gerencial Erika Torres. Sus testimonios, recogidos en declaraciones juradas, y apoyados por documentos presentados por la parte apelada en su solicitud de sentencia sumaria, detallan el proceso de evaluación que destacó áreas de productividad, calidad del trabajo, conocimiento de las funciones, enfoque al cliente, y trabajo en equipo de quienes ocupaban los cinco (5) puestos de trabajo, de misma clasificación ocupacional, a ser eliminados localmente por este plan de recortes.

De los hechos y documentos presentados por la parte apelada, se desprende que el despido respondió a una reestructuración nacional de la compañía ADT, quien demostró que el despido de los empleados seleccionados se justifica en el hecho sobre la reducción del volumen de negocios de la empresa.[28]  Como documento de apoyo sobre dicha decisión de alcance nacional, la parte apelada presentó y referenció con su escrito la lista que incluye las posiciones seleccionadas en el proceso de reajuste laboral.[29]  Según esbozado en el derecho precitado, la Ley 80 considera justa causa la razón provista por la parte apelada.

Por otro lado, destacamos que, respecto a su desempeño, el apelante obtuvo la puntuación más baja de todos los empleados, entiéndase, 1.4 de 3.0, además de obrar en su expediente de personal varias acciones disciplinarias.[30]  Debido a que la

---

[28] Véase, pág. 41, del Apéndice del recurso de la parte apelante. *Contestación a la querella.*

[29] Véase, págs. 167-191, del Apéndice del recurso de la parte apelante.

[30] Véase, pág. 80, del Apéndice del recurso de la parte apelante. *Reduction in Force (RIF) Evaluation Form.* También, véase, págs. 114 (*Plan de mejoramiento del rendimiento del empleado,* con fecha del 02/14/2023), 115 (*Advertencia por escrito al empleado,* con fecha del 10/29/2021), 116 (*Performance Improvement Plan,* con fecha del 03/23/17).

puntuación de la parte apelante no cumplía con las expectativas de su posición ADT se encontraba en posición de despedirlo de manera justificada.

Es bien sabido que, como foro revisor, nos encontramos en la misma posición que el foro de primera instancia. En el caso de marras colegimos que, las determinaciones de hechos consignadas en la *Sentencia* corresponden a la credibilidad y el valor probatorio que el foro *a quo* otorgó a la evidencia presentada por la parte apelada. Al examinar los planteamientos esbozados por la parte apelante al cuestionar las determinaciones de hechos alcanzadas por este en su *Sentencia,* luego de revisar la evidencia que tuvo el foro sentenciador ante su consideración, concluimos que los mismos son inmeritorios. Como mencionamos previamente, la parte apelante descansó en meras alegaciones genéricas y no logró controvertir los hechos esbozados como incontrovertidos por la parte apelada. Consecuentemente, tras incumplir con los requisitos expuestos en la Regla 36.3 de Procedimiento Civil, *supra,* los hechos propuestos en la *Moción de Sentencia Sumaria* deben darse por admitidos[31].

En conclusión, al realizar el análisis *de novo* del expediente ante nuestra consideración, concordamos con la determinación del foro *a quo*. La parte apelante no logró presentar controversia real sobre los hechos o contravención del derecho aplicable y nuestra revisión apoya la conclusión de foro primario. En el caso de marras procedía que el foro primario dictara sentencia sumaria, a favor de la parte apelada como, en efecto, lo hizo. Lo anterior, puesto que, de las alegaciones, deposiciones en unión con toda la prueba presentada, se demostró que no existe controversia real sustancial

---

[31] *Ramos Pérez v. Univisión,* supra, pág. 221.

en cuanto a algún hecho esencial y pertinente[32]. Por lo tanto, colegimos que no se cometieron los errores señalados.

**IV**

Por los fundamentos antes expuestos, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[32] Regla 36.3(e) de Procedimiento Civil, *supra.*